**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292673)
isabelm@potterhandy.com
Claire Cylkowski (SBN 335352)
Clairec@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Tel: (415) 534-1911
Fax: (888) 422-5191

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE ADAM, CLAIRE RAPPOPORT, individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AIRLINES REPORTING CORPORATION (ARC), a Virginia corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | **CLASS ACTION**<br><br>**CLASS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (FOR VIOLATIONS OF:**<br><br>**(1) CALIFORNIA CONSUMER PRIVACY ACT, Cal. Civ. Code § 1798.100 et seq.;**<br>**(2) CALIFORNIA INVASION OF PRIVACY ACT, Cal. Penal Code § 630 et seq.;**<br>**(3) STORED COMMUNICATIONS ACT, 18 U.S.C. § 2701 et seq.**<br>**(4) FRAUD – MISREPRESENTATION & CONCEALMENT**<br>**(5) INVASION OF PRIVACY;**<br>**(6) INTRUSION UPON SECLUSION;**<br>**(7) BREACH OF CONTRACT; and**<br>**(8) VIOLATION OF CA UCL, CAL BUS. & PROF CODE §§ 17200, *et. seq.***<br><br>**DEMAND FOR JURY TRIAL** |

Class Action Complaint

Plaintiffs Janice Adam and Claire Rappoport ("Plaintiffs"), individually and on behalf of classes of similarly situated individuals (defined below), bring this action against Defendant Airlines Reporting Corporation (ARC) ("ARC" and/or "Defendant") and Does 1 through 100 (collectively, "Defendants").

**I.**
**SUMMARY OF THE CASE**

1.      This is a class action against ARC's unauthorized collection, retention, disclosure, sale, and commercial use of air travelers' and ticket purchasers Personally Identifiable Information ("PII"), including, passenger name records (PNRs), booking records, travel itineraries, dates of travel, debit and credit card payment data, contact information, and related data ("Travel Data"), without consent in violation of state and federal privacy laws.

2.      Defendant is a financial clearinghouse through which travel agencies pay airlines for the tickets those agencies have sold. Defendant is owned by a handful of prominent airlines but provides financial settlement services for over 240 airlines and processes ticket sales for roughly 12 billion flights per year.

3.      In or about June 2025, several reports[1] confirmed that Defendant covertly sold access to airline flight data and information for all purchases processed through ARC, including full flight itineraries, passenger name records, and financial details such as credit and debit card information, to government agencies without meaningful consumer notice, consent, or legal process (hereinafter "News Reports").

4.      Within the past year, Plaintiffs purchased airline tickets through a travel agency, Expedia.com at https://www.expedia.com/.

5.      Unbeknownst to Plaintiffs, Defendant took the PII and Travel Data transmitted from Expedia for ticket settlement purposes and stored it in Defendant's "Travel Intelligence Program"

---

[1] Airlines Don't Want You to Know They Sold Your Flight Data to DHS at https://www.404media.co/airlines-dont-want-you-to-know-they-sold-your-flight-data-to-dhs/ (last accessed on September 8, 2025).  U.S. Airlines Built A Secret Data Broker To Help The Government Spy On Customers available at https://www.techdirt.com/2025/06/12/u-s-airlines-built-a-secret-data-broker-to-help-the-government-spy-on-customers/  (last accessed on September 5, 2025). ARC sells airline ticket records to ICE and others available at https://papersplease.org/wp/2025/05/08/arc-sells-airline-ticket-records-to-ice-and-others/ (last accessed on September 5, 2025). Airlines Are Collecting Your Data and Selling It to ICE https://www.levernews.com/airlines-are-collecting-your-data-and-selling-it-to-ice/ (last accessed on September 8, 2025).

Class Action Complaint

("TIP") database.

6.    As per the News Reports, Defendant then sold or otherwise provided access to this database to third party government agencies such as the U.S. Department of Homeland Security's Customs and Border Protection ("CBP") Immigration and Customs Enforcement ("ICE") and Department of Justice ("DOJ") without any notice to or consent from Plaintiffs. Upon information and belief, Plaintiffs believe Defendant made this data available to other third parties as well.

7.    Defendant's customers, including Plaintiffs, trust that their PII and Travel Data will be maintained in a secure manner and kept from unauthorized disclosure to third parties as outlined in Defendant's Privacy Policy page.[2]

8.    Defendant misrepresented the purpose and scope of data use by claiming the data was used solely for ticketing, payment settlement, and operational purposes, while in reality Defendant was repurposing this data for commercial sale and widespread government surveillance.

9.    Defendant perpetuated this misrepresentation by hiding ARC's relationship with TIP and instructed the third parties that purchased TIP licenses, to not to reveal where they sourced the flight data from.

10. According to the News Reports, Defendant has disseminated, sold, licensed, or otherwise provided Travel Data containing PII, like travel itineraries, payment data, and contact information to the federal government and other third parties without adequate consumer notice, without opt-out opportunities required under California law for sales of personal information, and without valid legal process authorizing such disclosures (the "Unauthorized Surveillance Scheme").

11.    Plaintiffs bring this action to redress violations of federal and California law, including the Stored Communications Act (18 U.S.C. § 2701 et seq.), the California Consumer Privacy Act ("CCPA"), the California Invasion of Privacy Act ("CIPA", Cal. Penal Code §§ 630 et seq.), invasion of privacy, intrusion upon seclusion, breach of contract (including as an intended third-party beneficiary of airlines' privacy promises), fraud, and California's Unfair Competition Law (Bus. & Prof. Code § 17200 et seq.) and are seeking injunctive relief, statutory and actual damages, restitution, disgorgement, and other relief.

---

[2] https://www2.arccorp.com/site-privacy-policy/ last accessed on August 18, 2025.

Class Action Complaint

12. Under Cal. Civ. Code § 1798.100(a), a business that collects a consumer's PII must, at or before the point of collection, inform the consumer of the categories of PII to be collected and the purposes for which the categories of PII shall be used.

13. Here, Defendant failed to provide Plaintiffs and class members with any notice at the time of data collection, whether directly or through the travel agency Expedia.com, that their personal Travel Data would be stored, aggregated, and sold to third parties, including government agencies.

14. Defendant's contracts with government agencies explicitly prohibit disclosure of Defendant's role as the data source, further concealing its involvement from the public and regulators. Defendant failed to disclose these practices and the existence of TIP in its privacy policy, did not obtain consumer consent, and only registered ARC as a data broker in California after politicians and media investigations exposed its conduct.[3] At the time of this filing, TIP is still not registered as a data broker in California. This lack of transparency violates multiple provisions of the California Consumer Privacy Act (CCPA), including Section 1798.100, which mandates notice and proportional use of collected data.

15. The PII disclosed in the Unauthorized Surveillance Scheme is protected by the California Consumer Privacy Act of 2018 ("CCPA"). For purposes of CCPA Section 1798.150, "personal information" is defined as an individual's first name or first initial and his or her last name in combination with any one or more additional data elements when either the name or the data elements are not encrypted or redacted, such as account number or credit or debit card number, in combination with any required security code, access code or password that would permit access to an individual's financial account.[4]

16. Here, customers' Travel Data and PII was shared or sold, without consent, to the third-parties via TIP. Defendants violated California law by failing to provide opt-out mechanisms or notice of sale, as required under the California Consumer Privacy Act (CCPA), despite selling or

---

[3] https://www.404media.co/airline-owned-data-broker-selling-your-flight-info-to-dhs-finally-registers-as-a-data-broker/ (last accessed on September 8, 2025).

[4] In other sections of the CCPA, "personal information" is defined more broadly as "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household."

Class Action Complaint

licensing Plaintiffs PII.

17. Under Cal. Civ. Code § 1798.150(a), any consumer whose nonencrypted and nonredacted personal information is subject to unauthorized access and disclosure as a result of a business's failure to implement and maintain reasonable security procedures may bring a civil action for statutory damages, injunctive relief, or any other relief the court deems proper.[5]

18. Similarly, the California Invasion of Privacy Act (CIPA) prohibits unauthorized interception, access, or use of communications, while the Stored Communications Act (18 U.S.C. §2701 et seq.) forbids unlawful access to stored electronic communications and records. Defendant's covert acquisition, storage, monetization, and distribution of Plaintiffs' Travel Data and sensitive PII through TIP constitutes violation of both statutes, as it involved access to electronic Travel Data and PII stored in Defendant's systems well beyond the scope of any authorized use.

19. Defendant further engaged in intrusion upon seclusion and invasion of privacy, as it pried into consumers' private travel histories and financial transactions without consent.

20. Defendant has represented, through public-facing policies and industry statements, that Travel Data is processed for purposes such as ticketing, billing, and airline operations and that personal information will be safeguarded and only used for authorized purposes. According to the News Reports, Defendant's actual practices diverge materially from those representations.

21. Defendant's failure to disclose its data brokerage practices with TIP in public-facing privacy policies mislead consumers about how their data would be used and shared.

22. Defendant's actions constitute a breach of contract with consumers, who reasonably expected their data to be used solely for the stated reservation and settlement purposes, not surveillance and resale.

23. Defendant facilitated warrantless government access to private travel records, thereby circumventing legal safeguards and exposing consumers to unwarranted surveillance without judicial oversight.

24. As a direct and proximate result of Defendant's conduct as alleged herein, Plaintiffs

---

[5] CCPA Section 1798.192 also states: "Any provision of a contract or agreement of any kind that purports to waive or limit in any way a consumer's rights under this title, including, but not limited to, any right to a remedy or means of enforcement, shall be deemed contrary to public policy and shall be void and unenforceable."

Class Action Complaint

and Class Members have suffered and continue to suffer injuries, including, but not limited to: loss of privacy and the secrecy of highly sensitive personal information; invasion of seclusion; loss of control over their private and sensitive data; the loss of the economic value of their PII and Travel Data; the ongoing risk of identity theft, fraud and unlawful surveillance, emotional distress, diminution of value in their personal information, and the loss of the benefit of the bargain they reasonably expected when they purchased airline tickets.

25.     This is also a consumer class action complaint seeking restitution of all monies unlawfully earned by Defendants for selling access to the data stored in their systems. Defendants have consistently failed to inform the public, including Plaintiffs, that the personal information they provided when they made reservations and purchased tickets will be disclosed by Defendants to third parties without their consent and authorization.

## II.
## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because Plaintiffs, and at least one member of the putative Class, as defined below, are citizens of a different state than Defendant, there are more than 100 putative Class Members, and the amount in controversy exceeds $5 million, exclusive of interest and costs. This Court has jurisdiction over Defendant because Defendant operates in and directs commerce to this District. Defendant intentionally avails itself of the markets within this District, rendering the exercise of jurisdiction by this Court just and proper. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Plaintiff resides in this District.

## III.
## PARTIES

**A.     PLAINTIFFS**

27.     Plaintiff Janice Adam is a natural person and a permanent, non-transitory resident of the State of California. Like millions of others, Plaintiff provided and entrusted her PII to Defendants. Within the past year Plaintiff Adam purchased an airline ticket through a travel agency, Expedia.com at https://www.expedia.com/. In or about June 2025, News Reports confirmed that

5

Class Action Complaint

Defendant covertly shared or sold passenger flight and Travel Data to the federal government and other third-parties, without authorization. Because of the Defendant's conduct as alleged herein, Plaintiff has suffered and continue to suffer injuries, including, but not limited to: loss of privacy and the secrecy of highly sensitive personal information; invasion of seclusion; loss of the economic value of her PII and Travel Data; the ongoing risk of identity theft and fraud; emotional distress; diminution of value in her personal information; and the loss of the benefit of the bargain she reasonably expected when she purchased travel.

28.     Plaintiff Claire Rappoport is a natural person and a permanent, non-transitory resident of the State of California. Like millions of others, Plaintiff provided and entrusted her PII to Defendants. Within the past year Plaintiff Rappoport purchased an airline ticket through a travel agency, Expedia.com at https://www.expedia.com/. In or about June 2025, News Reports confirmed that Defendant covertly shared or sold passenger flight and Travel Data to the federal government and other third-parties, without authorization. Because of the Defendant's conduct as alleged herein, Plaintiff has suffered and continue to suffer injuries, including, but not limited to: loss of privacy and the secrecy of highly sensitive personal information; invasion of seclusion; loss of the economic value of her PII and Travel Data; the ongoing risk of identity theft and fraud; emotional distress; diminution of value in her personal information; and the loss of the benefit of the bargain she reasonably expected when she purchased travel.

**B.    DEFENDANT**

1.     Defendant, Airlines Reporting Corporation ("ARC"), is a Virginia corporation, headquartered at 3000 Wilson Blvd, Suite 300, Arlington, VA 22201. Defendant is jointly owned and operated by nine major airlines. The acts alleged to have been done by Defendants were authorized, ordered, or performed by its directors, officers, managers, agents, employees, or representatives in the course of their employment and while actively engaged in the management of Defendants' affairs. Defendants, through their subsidiaries, divisions, affiliates and agents, operated as a single unified entity with each acting as the agent or joint-venturer of or for the others regarding the acts, violations, and common course of conduct alleged herein and under the authority and apparent authority of parent entities, principals and controlling parties.

Class Action Complaint

2.     Defendant provides a critical service to the air travel industry by providing financial settlement of transactions, including refunds and/or exchanges, between participating airlines and travel agencies. ARC provides services to and concerning California residents and markets its services throughout the United States.

**C.     DOE DEFENDANT**

3.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to the Plaintiffs, who therefore sue the Defendants by such fictitious names under the Code of Civil Procedure § 474. Each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiffs will seek leave of court and/or amend this complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES 1 through 100 when such identities become known. Any reference made to a named Defendant by specific name or otherwise, individually or plural, is also a reference to the actions or inactions of DOES 1 through 100, inclusive.

**D.     AGENCY/AIDING AND ABETTING**

4.     At all times herein mentioned, Defendants, and each of them, were an agent or joint venturer of each of the other Defendants, and in doing the acts alleged herein, were acting with the course and scope of such agency.  Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

5.     Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs and the Class, as alleged herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

7

Class Action Complaint

## IV.
## FACTUAL BACKGROUND

6.     This matter involves a three-tiered sequence of actions that results in the unlawful disclosure of data and the intentional concealment of such practices from the public:

- Level 1: Airlines and travel agencies transmit ticketing and payment data to ARC as part of standard clearinghouse operations.

- Level 2: ARC initially stores the data for legitimate ticket settlement purposes but retains the information beyond the necessary timeframe in the previously undisclosed Travel Intelligence Program ("TIP") database.

- Level 3: ARC sells or licenses access to TIP to third parties, including government intelligence and law enforcement agencies, enabling expanded surveillance and data collection of U.S. and non-U.S. travelers beyond what is legally permitted under existing aviation security laws and without the consent of consumers.[6]

**A.     Level 1: TRAVEL AGENCIES' ROLE IN SUPPLYING DATA TO ARC**

7.     Plaintiffs purchased airline tickets through the online travel agency, Expedia at https://www.expedia.com/. Expedia served as the booking intermediary between the Plaintiff and the airline. In doing so, Expedia electronically transmitted Plaintiffs' PII and Travel Data including passenger and payment information to Defendant for the limited purpose of ticket settlement with the airline(s).

**B.     Level 2: ARC INDEFINITELY STORES DATA IN TIP**

1.     Defendant is a financial clearinghouse through which travel agencies pay airlines for the tickets those agencies have sold.  Defendant functions as the sole U.S. financial clearinghouse for airline tickets sold through online travel agencies like Expedia. Defendant has no domestic competitors. Founded and owned by a consortium of major U.S. airlines, Defendant processes payments for over 200 carriers, including foreign airlines.

---

[6] Airlines Don't Want You to Know They Sold Your Flight Data to DHS available at https://www.wired.com/story/airlines-dont-want-you-to-know-they-sold-your-flight-data-to-dhs/ (last accessed on August 18, 2025).

Class Action Complaint

2.      Here, Defendant's role is intended to be purely administrative as a financial clearinghouse—verifying transactions, ensuring airlines receive payment, and confirming ticket issuance.

3.      However, in or about June 2025, News Reports confirmed that Defendant exceeded this limited function by systematically retaining the full scope of passenger Travel Data and sold access to it through ARC's TIP database.

**C.      Level 3: ARC PROFITS OFF OF MASS SURVEILANCE**

4.      Once the data is collected by Defendant, Defendant sells access to the database through TIP. This arrangement bypasses statutory limitations on government collection of passenger travel data, enabling government agencies such as the DHS and ICE to access historical and future flight records, personal identifiers, and payment details without notice to the data subjects or their consent.[7]

5.      The existence of TIP was previously unknown to Plaintiffs and was not disclosed to Plaintiffs through the booking process. This data was stored and made accessible to government agencies and other third-parties without consumer notice or consent.[8]

6.      Through their dominating market position and their role as a financial clearinghouse, Defendant has access to immense amounts of personal customer data.

7.      Defendant operates TIP as a shadow division, and intentionally keeps it absent from ARC's public-facing materials, including its website and privacy policy. ARC is publicly registered as a data broker, but TIP is not.

8.      TIP offers direct search access to ARC's ticketing database which contains billions of records spanning several years of past and future travel to "authorized" government entities.[9] These records include but are not limited to PII and Travel Data such as: full passenger name records (PNRs), itinerary details (domestic and international), fare and payment details, including credit

---

[7] *Id.*

[8] Airlines Don't Want You to Know They Sold Your Flight Data to DHS available at https://www.404media.co/airlines-dont-want-you-to-know-they-sold-your-flight-data-to-dhs/ (last accessed on September 8, 2025).

[9] ARC sells airline ticket records to ICE and others available at https://papersplease.org/wp/2025/05/08/arc-sells-airline-ticket-records-to-ice-and-others/ (last accessed on August 18, 2025).

9

Class Action Complaint

card numbers and data for fraud investigations, date of ticket purchase and issuing agency, and historical travel patterns.

9.    Daily, travel agencies must transmit all ticket sales to Defendant. This creates a continuous, normalized dataset that TIP can make searchable by factors such as name, credit card, or itinerary. This enables agencies like ICE and Homeland Security to conduct targeted and bulk travel surveillance.

10.    The role of ARC/TIP and the reasons law enforcement and government agencies want access to this unique source of aggregated data, are described by ICE in their recent procurement request:

> "With its comprehensive industry data, ARC provides unmatched insights and analytics, supporting airline revenue management, fraud prevention, and operational efficiencies. Its primary role is to accredit travel agencies and manage financial settlements, generating an extensive, real-time database of airline tickets sold.
> Daily, travel agencies must submit ticket sales and funds for over 240 airlines worldwide to ARC. This process enables ARC's TIP, an essential intelligence tool integrated into HSI [Homeland security Investigations] INTEL's investigative mission. TIP allows authorized law enforcement and national security personnel to search ARC's air ticketing database to track and analyze travel patterns of persons of interest. Users can conduct searches using key identifiers such as passenger name, itinerary, fare details, and payment methods.
> …This system provides unique access to "ticket face" information, including full flight itineraries, passenger name records, and financial details, which are otherwise difficult or impossible to obtain. The TIP database holds over one billion records, spanning 39 months of past and future travel data—an unparalleled intelligence resource.
> Through TIP licenses, INTEL analysts gain unrestricted access to all sold ticket databases, enabling targeted searches by name or credit card number." [10]

D.    **DEFENDANTS' RELEVANT PRIVACY POLICIES**

11.    Neither Expedia nor Defendant provided Plaintiffs or Class Members with any notice that Defendant would store and sell their personal data to third parties such as government agencies.

12.    TIP is not disclosed in Defendant's privacy policy, nor in the privacy policies of the airlines or agencies that transmit customer data to Defendant. Defendant's Privacy Policy is

---

[10] ARC Sells Airline Ticket Records to ICE and Others
https://papersplease.org/wp/2025/05/08/arc-sells-airline-ticket-records-to-ice-and-others/

10

Class Action Complaint

available on its website and provides customers with terms and conditions regarding the treatment of their PII. It states:

> Privacy Policy
>
> Effective June 9, 2025
>
> Airlines Reporting Corporation ("ARC," "us," or "we") provides a critical service in the air travel industry by providing financial settlement of transactions, including refunds and/or exchanges, between participating airlines and travel agencies (collectively, "Customers"). As part of its transaction settlement processing services, ARC may receive personal data, primarily individual passenger name and credit card number, as well as passenger name record ("PNR"), ticket number, frequent flyer number, date of birth, and other identifiers associated with airline tickets sold to passengers through U.S.-based travel agencies accredited by ARC. …
>
> How Information May Be Used
>
> Personally Identifiable Information (PII) received or collected by ARC is used primarily to complete transactions, fulfil requests, and facilitate performance of contracts between ARC and participants in ARC's programs and services (e.g., ARC-accredited travel agents, CTDs, participating airlines and other ARC participants (collectively "Participants")) or as otherwise required by ARC's business practices or needs. PII is made available to ARC employees when necessary for the customary exercise of their duties. Additionally, ARC may contract with third party service providers, contractors and suppliers to conduct surveys or provide products, services, event registration, or other customer solutions to you based upon and using the information ARC gathers and receives. ARC contractors may have access to PII in the course of assisting in ARC's business operations ARC endeavours to limit access to Personally Identifiable Information by such third parties to that which is necessary for the contractor to perform its legally and contractually required functions. ARC uses reasonable means to ensure that the information you provide is not used by such third parties for purposes other than described in this policy.
>
> ARC processes information related to airline carrier transactions (airline tickets, refunds, exchanges, etc.) and retains such information for a period deemed necessary to meet ARC's legal obligations and business requirements to facilitate the processing and settlement of transactions and during which disputes between the parties to the transactions are likely to arise. ARC also prepares and publishes anonymized aggregated or consolidated transactional data.
>
> Keeping Information Secure
> To protect against unauthorized access, disclosure, alteration or destruction of information, to maintain data accuracy, to safeguard and secure the information in the database, ARC has put in place physical, electronic, and

11

Class Action Complaint

managerial technical security controls that are proportionate to the personal data's level of confidentiality or sensitivity.

We have established an information security program based on industry standard practices including policies and procedures for employees who may have access to your information. We also provide regular information security training for employees.[11]

13.    Plaintiffs did not provide consent for Defendant to use the booking information beyond ticket settlement.

14.    Defendant's concealment of its role and its undisclosed data sales deprived Plaintiffs of the ability to exercise rights under the CCPA, including the right to opt-out of data sales.

15.    Defendant's Privacy Policy assures its customers their PII is secure.   By failing to protect its customers' PII through reasonable security measures and management practices, Defendant has shared personal information with others for purposes other than the services customers requested without their permission.

E.    **UNDER CURRENT LAW, DHS AND TSA RECEIVE SECURE FLIGHT PASSENGER DATA UNDER LIMITED CIRCUMSTANCES AND ONLY FOR SECURITY SCREENING PURPOSES**

16.    Secure Flight data:
   a.   Is limited to name, date of birth, and gender (matching government-issued ID)
   b.   Is provided no earlier than 72 hours before the flight
   c.   Must be deleted after the flight if the passenger is not deemed suspicious
   d.   Does not include full ticket image, payment method, or extended travel history[12]

17.    In contrast, ARC/TIP data:
   a.   It is collected on the date of ticket purchase (weeks or months before departure)
   b.   Retains complete ticket records for years
   c.   Is normalized across all agencies and carriers for easy cross-referencing
   d.   Contains categories of data not lawfully obtainable through Secure Flight, such as full ticket image and payment details
   e.   Includes U.S. citizens and non-U.S. persons equally
   f.   Extends surveillance into both future planned travel and past travel history beyond statutory limits.

---

[11] ARC's Privacy Policy, https://www2.arccorp.com/site-privacy-policy/ last accessed on August 18, 2025.

[12] What is required by the Secure Flight regulations that wasn't required before? Available at https://papersplease.org/wp/secure-flight/ (last accessed on August 18, 2025). Privacy Impact Assessment for the Secure Flight Program available at https://www.dhs.gov/sites/default/files/publications/privacy-pia-tsa-018-g-Secure%20Flight%2C%2020141208.pdf (last accessed on August 18, 2025).

12

Class Action Complaint

18.    The TIP arrangement effectively allows third parties to circumvent statutory safeguards placed on airline passenger data. Instead of relying solely on Secure Flight the government gains unrestricted access to a commercial, private-sector database containing years of detailed Travel Data, PII and payment histories of millions of travelers, most of whom are not under suspicion.

19.    Despite presenting itself as a neutral financial clearinghouse, Defendant failed to safeguard the PII of millions of airline passengers whose data it received through travel agencies like Expedia. Defendant's publicly available privacy policy claims that it collects PII solely for transaction settlement purposes between travel agencies and airlines. However, Defendant's policy omits any mention of TIP, a covert data brokerage platform that stores and monetizes this sensitive information.

20.    Defendant does not disclose that it retains passenger data for years, nor that it sells or licenses access to this data to federal agencies for surveillance and investigative purposes.

21.    These omissions constitute a material misrepresentation and a breach of Defendant's duty to provide transparent notice under California law. By failing to inform consumers that their PII and Travel Data would be stored long-term and shared with government entities, Defendant deprived them of the opportunity to opt out, request deletion, or exercise other statutory rights under the California Consumer Privacy Act (CCPA). Defendant's concealment of its TIP database and its contractual requirement that government agencies not disclose ARC as the data source further demonstrate its intent to mislead the public operate outside the bounds of lawful data governance. These actions not only violate the spirit and letter of privacy law, but also expose consumers to unwarranted surveillance, data misuse, and loss of control over their personal information.

22.    By collecting, using, and deriving significant commercial benefit from passengers' PII and Travel Data, Defendant had a legal duty to take reasonable steps to protect this information from unauthorized disclosure. Defendant also had a legal duty under federal and state statutes, including Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798 et seq., to safeguard this data.

13

Class Action Complaint

### 1. FTC Security Guidelines

23.    The Federal Trade Commission ("FTC") has established security guidelines and recommendations to help entities protect PII and reduce the likelihood of Unauthorized Surveillance Schemes and the disclosure of sensitive information.

24.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, failing to use reasonable measures to protect PII by companies like Defendants. Several publications by the FTC outline the importance of implementing reasonable security systems to protect data. The FTC has made clear that protecting sensitive customer data should factor into virtually all business decisions.

25.    In 2016, the FTC provided updated security guidelines in a publication titled Protecting Personal Information: A Guide for Business. Under these guidelines, companies should protect consumer information they keep; limit the sensitive consumer information they keep; encrypt sensitive information sent to third-parties or stored on computer networks; identify and understand network vulnerabilities; regularly run up-to-date anti-malware programs; and pay particular attention to the security of web applications – the software used to inform visitors to a company's website and to retrieve information from the visitors.

26.    The FTC recommends that businesses do not maintain payment card information beyond the time needed to process a transaction; restrict employee access to sensitive customer information; require strong passwords be used by employees with access to sensitive customer information; apply security measures that have proven successful in the particular industry; and verify that third-parties with access to sensitive information use reasonable security measures.

27.    The FTC also recommends that companies use an intrusion detection system to immediately expose a data breaches and unauthorized data disclosure; monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the system; monitor for the transmission of large amounts of data from the system; and develop a plan to respond effectively to a data breach in the event one occurs.

28.    The FTC has brought several actions to enforce Section 5 of the FTC Act. According to its website:

14

Class Action Complaint

When companies tell consumers they will safeguard their personal information, the FTC can and does take law enforcement action to make sure that companies live up these promises. The FTC has brought legal actions against organizations that have violated consumers' privacy rights, or misled them by failing to maintain security for sensitive consumer information, or caused substantial consumer injury. In many of these cases, the FTC has charged the defendants with violating Section 5 of the FTC Act, which bars unfair and deceptive acts and practices in or affecting commerce. In addition to the FTC Act, the agency also enforces other federal laws relating to consumers' privacy and security.

29.     Defendant shared or sold protected PII data without notifying consumers or offering opt-out mechanisms, exposing them to privacy violations and potential misuse. Defendant only recently implemented multifactor authentication in May 2025 after inquiries from politicians despite handling highly sensitive data. This delay in setting up proper safeguards and misuse of customer data reflects inadequate data management practices. Among other violations, Defendant violated its obligations under Section 5 of the FTC Act.

## F.     THE UNAUTHORIZED SURVEILLANCE SCHEME HARMED PLAINTIFFS AND CLASS MEMBERS

30.     Plaintiffs and Class members have suffered significant and ongoing harm as a direct result of Defendant's unauthorized acquisition, storage, and sale of sensitive personal PII and Travel Data. This harm extends well beyond abstract concerns and implicates fundamental rights to privacy, autonomy, and security. The collection and resale of Plaintiffs' airline booking records, including name, itinerary, payment details, and travel history, without knowledge or consent constitutes a grave invasion of privacy that has produced injury to the Plaintiffs and class members.

31.     At the core of this case is Plaintiffs' and Class members' constitutionally and statutorily protected rights to privacy. By booking airline tickets through an online travel agent, Plaintiffs, like all class members, disclosed information solely for the narrow purpose of reserving and paying for lawful air travel. Plaintiffs, like all class members, never consented to that information being collected and warehoused in Defendant's "Travel Intelligence Program," and sold to government intelligence and law enforcement agencies. Such conduct amounts to a highly offensive intrusion: Plaintiffs and Class Members reasonably expected that flight booking data

15

would remain confined to the transaction and would not become part of a mass surveillance repository.

32. The breadth of data Defendant aggregated magnifies the privacy invasion. Unlike the Secure Flight program administered by TSA[13], which collects limited identifiers only 72 hours before departure and deletes most data after travel is complete, Defendant stored Plaintiffs' and Class Members' full ticketing history, payment details, itineraries, and long-term travel records, for years. This comprehensive profiling, combined with the secret resale of such records to government agencies, nullifies any zone of personal seclusion and autonomy Plaintiffs and Class Members maintained.

33. The unauthorized dissemination of Plaintiffs' and Class Members' travel history has caused profound psychological harm. Plaintiffs and Class Members experiences stress, anxiety, and a persistent fear of surveillance knowing that federal agencies, including immigration and law enforcement, and other unknown third parties, have unfettered access to records of where Plaintiffs and Class Members traveled, with whom, and how often, as well as other sensitive personal information. This knowledge generates constant unease that any future travel may subject Plaintiffs and Class Members to heightened scrutiny, detention, or suspicion.

34. The distress is not speculative. News Reports demonstrates that Defendant's database has been marketed directly to agencies tasked with immigration enforcement and counterterrorism intelligence. Plaintiffs, like all class members, reasonably fear that innocuous personal travel could be misconstrued or mischaracterized by government actors, resulting in reputational damage, loss of liberty, or denial of services. The uncertainty about how long Defendant retains the data and to whom it has been sold compounds this anxiety, leaving Plaintiffs and Class Members in a state of ongoing psychological burden.

35. Perhaps the most significant injury is the loss of control over one's own personal data. Autonomy in personal decision-making is central to privacy rights. When Plaintiffs and Class Members provided flight booking information, it was with the expectation that such data would be

---

[13] Privacy Impact Assessment for the Secure Flight Program available at https://www.dhs.gov/sites/default/files/publications/privacy-pia-tsa-018-g-Secure%20Flight%2C%2020141208.pdf (last accessed on August 18, 2025).

16

Class Action Complaint

used solely for completing a ticketing transaction. By secretly diverting and monetizing that data, Defendant stripped Plaintiffs and Class Members of the ability to control the context and purpose of its use.

36. This unauthorized repurposing erodes the principle of informational self-determination: the right to decide how, when, and to what extent personal data is shared with others. Once Defendant sold Plaintiffs' and Class Members' flight records, the data became part of an ecosystem of surveillance outside Plaintiffs' and Class Members' knowledge or influence. This loss of autonomy represents a present injury and a future risk, as Plaintiffs and Class Members can no longer ensure the confidentiality or appropriate use of personal Travel Data.

37. Plaintiffs' and Class Members' injuries are both actual and ongoing. The emotional distress, stress, anxiety, and fear of profiling, exists today. The invasion of privacy from Defendant's unauthorized capture and distribution of travel records has already occurred. The harms are not hypothetical or contingent; they are real and continuing.

38. Additionally, Plaintiffs, like all class members, faces substantial potential harm. Defendant's retention of travel records for years exposes Plaintiffs and Class Members to long-term risks of misuse, further unauthorized disclosures, or profiling based on patterns of movement. Once government agencies and third parties have purchased access to TIP, they have the power to analyze Plaintiffs' and Class Members' travel for reasons unrelated to national security or law enforcement, effectively criminalizing ordinary behavior and chilling Plaintiffs' and Class Members' freedom of movement. The possibility that Plaintiffs' and Class Members' personal information could be shared with additional entities or used to justify adverse government action heightens the ongoing nature of the harm.

39. Finally, the nature of the invasion is highly offensive to a reasonable person. Ordinary consumers expect airlines and booking agencies to safeguard sensitive travel records, not to traffic them as commodities. Plaintiffs, like all class members, disclosed personal data in reliance on implicit assurances of confidentiality and necessity. Defendant's covert exploitation of that trust constitutes an egregious violation of social norms and statutory protections. Courts have consistently

17

Class Action Complaint

recognized that unauthorized disclosures of sensitive data such as travel, health, and financial records, satisfy the threshold for actionable invasion of privacy.

40.    In sum, Plaintiffs and Class Members have suffered significant harm from Defendant's conduct: (1) an unlawful intrusion into a highly private sphere; (2) ongoing emotional distress including stress, anxiety, and fear of surveillance; (3) a loss of autonomy and control over personal information; and (4) actual and potential harms stemming from misuse, profiling, and continued retention of Plaintiffs' travel history. This combination of injuries underscores the seriousness of Defendant's privacy violations and supports Plaintiffs' claims under state and federal law.

### G.    DEFENDANTS FAILED TO TAKE REASONABLE STEPS TO PROTECT ITS CUSTOMERS' PII

41.    Defendants, by secretly storing and commercializing sensitive flight booking data through their TIP database, failed to adopt reasonable security and privacy safeguards to protect the PII of its customers. In doing so, Defendants disregarded established statutory obligations, industry standards, and consumer expectations, leaving millions of individuals—including Plaintiffs and Class Members—exposed to intrusive surveillance and misuse of their data.

42.    Defendants' mishandling of personal data demonstrates systemic negligence and willful disregard for privacy rights. Rather than limiting the use of passenger information to the legitimate purpose of processing airline ticket transactions, Defendant built a massive data warehouse, aggregating over one billion records, and monetized this information by selling access to third-party government agencies. This practice represents a fundamental failure to safeguard customer information and a violation of multiple state and federal privacy statutes.

43.    A critical aspect of protecting personal data is ensuring that its use is limited to the purpose for which it was collected. Here, Defendant collected PII through ticket settlement processes. Reasonable safeguards required Defendant to confine that data to settlement and reconciliation activities, not to create a surveillance database for resale.

44.    Defendant failed to establish any mechanism to obtain meaningful consent from consumers before diverting their booking records into the TIP system. Plaintiffs, like millions of

18

Class Action Complaint

other travelers, had no notice that their information would be retained indefinitely or disclosed to third parties beyond the airline and booking intermediary. The absence of explicit consent protocols violates principles embedded in the California Consumer Privacy Act (CCPA), which requires disclosure of data collection practices and grants consumers the right to opt out of the sale of their personal information.

45.    By failing to provide notice and choice, Defendant deprived Plaintiffs of autonomy over their personal data and created a deceptive environment where consumers unknowingly surrendered highly sensitive travel information.

46.    Best practices in privacy and data security demand data minimization which highlights the importance of collecting only what is necessary for a specific business purpose and retaining it only as long as required. Defendant ignored this principle entirely.

47.    Unlike TSA's Secure Flight program[14], which receives only minimal identifiers within 72 hours of departure and deletes data soon thereafter if no risk is identified, Defendant collected and stored entire ticket records at the time of purchase. This retention extended for years, long after the original transaction was complete and for purposes outside of their role as a financial clearinghouse. By warehousing a vast trove of unnecessary information Defendant amplified the risks of misuse, breach, and secondary exploitation.

48.    Reasonable steps would have included truncating payment data, anonymizing travel histories, or deleting personal identifiers once ticket transactions were reconciled. Defendant's refusal to employ such measures demonstrates a failure to implement basic safeguards recognized across industries.

49.    Defendant failed to establish adequate technical and administrative controls to prevent unauthorized access and disclosure of sensitive data. By directly marketing access to government agencies, Defendant effectively treated its customer database as a commodity, without ensuring the legality, necessity, or proportionality of disclosure. Reasonable safeguards would have included:

---

[14] Privacy Impact Assessment for the Secure Flight Program available at
https://www.dhs.gov/sites/default/files/publications/privacy-pia-tsa-018-g-Secure%20Flight%2C%2020141208.pdf
(last accessed on August 18, 2025).

19

Class Action Complaint

a. Access restrictions ensuring that data was used solely for ticket settlement purposes.
b. Audit controls to monitor how data was accessed and by whom.
c. Contractual limitations preventing unauthorized resale or disclosure.
d. Encryption and anonymization to reduce risk in case of external access.

50. Instead, Defendant facilitated broad, ongoing access to identifiable customer records for third parties and government agencies. This wholesale disclosure violated not only consumer trust but also established state and federal protections.

**H.    Defendant's conduct stands in stark contrast with statutory standards and industry norms:**

California Consumer Privacy Act (CCPA): Requires businesses to inform consumers about data collection, purpose, and sharing, and prohibits the unauthorized sale of personal information without consent. Defendant's conduct violated these requirements by secretly reselling PII and Travel Data to third parties.

Federal Aviation Passenger Screening Programs: Secure Flight and related programs limit data collection to minimal identifiers and impose strict deletion requirements. Defendant's indefinite retention of complete booking histories ignored these statutory safeguards.

Reasonable Industry Practices: Airlines and online travel agencies typically limit use of customer information to transaction processing and frequent flyer programs. Defendant's expansion of this information into a surveillance data repository represented a radical deviation from industry norms.

51. Defendant therefore not only failed to protect customer data but actively pursued practices inconsistent with law and customs, exacerbating harm to Plaintiffs and Class Members.

52. These harms are not hypothetical but flow directly from Defendant's decision to prioritize monetization of personal data over the implementation of reasonable safeguards.

53. Defendant's mishandling of personal travel data represents a profound failure to take reasonable steps to protect PII. Instead of limiting collection, restricting access, and deleting data after its business purpose was fulfilled, Defendant chose to indefinitely store and sell sensitive information to government agencies. This practice violates statutory obligations, defies industry standards, and constitutes a breach of consumers' trust.

Class Action Complaint

84.    Defendant's conduct reflects systemic negligence, intentional exploitation, and a wholesale disregard for privacy protections, exposing Plaintiffs and millions of travelers to ongoing harm.

## V.
## CLASS ACTION ALLEGATIONS

85.    Plaintiffs bring this action under Code of Civil Procedure §382, individually and on behalf of all other persons similarly situated.  The putative class that Class Representatives seek to represent is composed of: All persons residing in California whose PII was compromised in the Unauthorized Surveillance Scheme (hereinafter the "Class").

86.    Excluded from the Class are the natural persons who are directors, and officers, of the Defendants.  Class Representatives expressly disclaim that they are seeking a class-wide recovery for personal injuries attributable to Defendants' conduct.

87.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of class members is unknown to Plaintiffs at this time, this can be ascertained through appropriate discovery.

88.    Plaintiffs' claims are typical of the claims of the members of the Class. All Class members were subject to the Unauthorized Surveillance Scheme and had their PII exposed or accessed in the Unauthorized Surveillance Scheme. Likewise, Defendants' misconduct impacted all Class members in the same manner.

89.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with Class members' interests because they were subject to the same Unauthorized Surveillance Scheme as Class members and face similar threats as a result of the Unauthorized Surveillance Scheme. Plaintiffs have also retained competent counsel with significant experience of litigating complex class actions.

90.    Defendants have acted in a manner that applies generally to Plaintiffs and all Class members. Each Class member has been similarly impacted by Defendants' failure to maintain reasonable security procedures and practices to protect customers' PII.

91.    Common questions of law and fact predominate over questions affecting individual Class members. The common questions of fact and law include:

21

Class Action Complaint

(a)     Whether Defendants violated § 1798.150 of the CCPA by failing to prevent Plaintiffs' and Class members' PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violations of their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

(b)     Whether Defendants violated the CIPA by failing to prevent Plaintiffs' and Class members' PII and communications from unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violations of their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information

(b)     Whether Defendants' misconduct identified herein amounts to a violation of Cal. Bus. & Prof. Code § 17200, et seq.

(c)     Whether Defendants owed Plaintiffs and Class members a duty to implement and maintain reasonable security procedures and practices to protect their personal information

(d)     Whether Defendants breached their duty to implement reasonable security systems to protect Plaintiffs' and the Class members' PII

(e)     Whether Defendants' breach of their duty to implement reasonable security systems directly and/or proximately caused damages to Plaintiffs and Class members

(f)     Whether Class members are entitled to compensatory damages, punitive damages, and/or statutory or civil penalties as a result of the Unauthorized Surveillance Scheme.

92.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The individual prosecution of separate actions by individuals would lead to repetitive adjudication of common questions of fact and law and create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants. There will be no difficulty in the management of this action as a class action.

93.     Proper and sufficient notice of this action may be provided to the Class members through direct mail.

94.     Moreover, the Class members' individual damages are insufficient to justify the cost of litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class. Absent certification of this action as a class action, Class Representative and the members of the Class will continue to be damaged by the unauthorized release of their PII.

22

Class Action Complaint

# VI.
# COUNTS

## COUNT I
### Violations of the California Consumer Privacy Act of 2018
### [Cal. Civ. Code § 1798.100 et seq.]

95.     Plaintiffs repeat and reallege every allegation set forth in the preceding paragraphs.

96.     Section 1798.100(a) provides that "[a] business that collects a consumer's personal information shall, at or before the point of collection, inform consumers as to the categories of personal information to be collected and the purposes for which the categories of personal information shall be used." Subsection (b) mandates that businesses may not collect additional categories of personal information or use collected personal information for additional purposes without providing notice to the consumer. Subsection (c) further requires that a business must not retain personal information longer than reasonably necessary for the disclosed purpose. Finally, subsection (d) emphasizes that the collection, use, retention, and sharing of consumer data must be "reasonably necessary and proportionate" to achieve the disclosed purpose.

97.     The statute is directly applicable here. ARC is a "business" under the CCPA because it determines the purposes and means of processing consumers' personal information, and meets the revenue and data processing thresholds for applicability. Plaintiffs and the putative class are "consumers" within the meaning of the Act, as California residents whose personal information was collected in the context of commercial transactions. The flight booking data at issue—including names, itineraries, payment information, and travel histories—constitutes "personal information" under Civil Code §1798.140.

98.     Defendant violated Section 1798.100(a) and (b) by failing to provide notice, at or before the point of collection, that consumers' flight booking data would be diverted from Expedia's settlement process and retained in Defendant's TIP database. Plaintiffs were never informed that Defendant would collect, store, or share their travel histories with federal agencies or third-parties.

99.     Instead, Defendant obtained Plaintiffs' information through its role as an intermediary clearinghouse, a role that consumers reasonably understood to be ministerial and

23

Class Action Complaint

limited in scope—i.e., ensuring proper settlement between Expedia and the airline. By transforming this transactional data into a permanent surveillance profile accessible by third-parties, Defendant used the data for a wholly undisclosed and incompatible purpose. This practice contravenes the plain language of §1798.100(b), which prohibits businesses from using consumer information for additional purposes absent explicit disclosure.

100.    Defendant also violated §1798.100(d), which requires that data collection and use be "reasonably necessary and proportionate" to the disclosed purpose. Defendant's disclosed purpose was settlement of ticket transactions; retaining a billion-record database of passenger itineraries, payment information, and histories for resale to government agencies and private actors is not reasonably necessary or proportionate to that purpose.

101.    Similarly, Defendant breached §1798.100(c) by retaining Plaintiffs' data indefinitely in its TIP database. The indefinite storage of sensitive flight data long after the completion of a ticket transaction far exceeds any legitimate retention need. Such indefinite retention heightens risks of misuse, government surveillance, and identity theft, all harms that §1798.100 was enacted to prevent.

102.    Plaintiffs could not exercise the right to limit collection, prohibit resale, or request deletion because Defendant's conduct was concealed. In this way, Defendant not only violated the text of §1798.100 but also the core purpose of the CCPA: transparency, accountability, and consumer control over personal data.

103.    Defendant's violations caused tangible and intangible harms. Plaintiffs' sensitive PII and Travel Data, protected under California law, was expropriated without disclosure, converted into a commercial surveillance product, and disclosed to government agencies for enforcement purposes. Plaintiffs' statutory rights under §1798.100 were denied, creating a loss of control over personal data and a heightened risk of surveillance and secondary misuse. These harms are actionable under Civil Code §1798.150, which provides for statutory and actual damages to the extent authorized under the statute, injunctive relief, and attorneys' fees and costs.

104.    Defendants violated § 1798.150 of the CCPA by failing to prevent Plaintiffs' and Class members' nonencrypted PII from unauthorized access and exfiltration, theft, or disclosure as

24

a result of Defendants' violations of their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

105.    Defendants collect consumers' personal information as defined in Cal. Civ. Code § 1798.140. Defendants have a duty to implement and maintain reasonable security procedures and practices to protect this personal information. As identified herein, Defendants failed to do so. As a direct and proximate result of Defendants' acts, Plaintiffs' and Class members' personal information, among other information, was subjected to unauthorized access, theft, or disclosure.

106.    Instead of serving as a neutral ticket settlement intermediary, Defendant operated as a covert data broker, secretly stockpiling and monetizing Californians' Travel Data and PII. Its conduct represents not only a clear violation of the statutory text but a betrayal of the consumer trust that §1798.100 was enacted to protect. Plaintiffs and the Class members are therefore entitled to damages, statutory penalties, and injunctive relief to halt Defendant's ongoing misconduct.

### COUNT II
**Violation of the California Invasion of Privacy Act**
**[CAL.PENAL CODE §§ 631 & 632 & 637.7.]**

107.    The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

108.    The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§630 to 638. The Act begins with its statement of purpose:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.
>
> Cal. Penal Code § 630.

109.    California Penal Code § 631(a) provides, in pertinent part:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner . . . willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any

25

Class Action Complaint

information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars . . .

110.    California Penal Code § 632(a) provides, in pertinent part:

A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars…

111.    Under the above-referenced sections of CIPA, a defendant must show it had the consent of all parties to a communication.

112.    Defendant, without notice or consent, intercepted, acquired, and retained Plaintiffs' and Class Members' confidential Travel Data and PII, diverting them into its TIP database.

113.    Defendant's acquisition, storage, and sale of these personal communications was not authorized by Plaintiffs or Class members, nor disclosed at the point of collection; furthermore, Defendant aided outside third parties (government agencies) to unlawfully and without consent of parties to the communication, read and learn the contents and meaning of the communications by selling licenses to the TIP database.

114.    The communications at issue included confidential PII and Travel Data that Plaintiffs and Class Members reasonably expected would remain private. By siphoning these transmissions into its TIP system and selling access, Defendant engaged in an unauthorized interception and use of those communications. Defendant's conduct was neither trivial nor incidental; it was systematic and deliberate, forming the basis of a commercial surveillance program that monetized Californians' private travel histories

115.    As a result of Defendant's outrageous and illegal conduct, Defendant secretly retained, used, and shared significant information regarding Plaintiffs that far exceeded the scope of prior authorization. Defendant's actions thereby constitute a violation of CIPA's prohibitions against unauthorized interception, recording, and use of private communications.

116.    Section 637.7 prohibits the use of electronic devices to determine the location or

26

Class Action Complaint

movement of a person without consent. By creating and maintaining a database of consumers' past and future travel itineraries, Defendant effectively tracked the physical movements and locations of Plaintiffs and Class members without their knowledge or consent, thereby operating as a form of unauthorized location surveillance in violation of § 637.7.

117. The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, Defendant's deliberate and admittedly purposeful scheme that facilitated its interceptions falls under the broad statutory catch-all category of "any other manner":

a. The computer codes and programs ARC used to collect Plaintiffs' communications while they were purchasing flight tickets through a travel agency
b. Plaintiffs' browsers and mobile applications
c. Plaintiffs' computing and mobile devices
d. ARC's data storage software and hardware
e. The computer codes and programs used by ARC to implement and maintain TIP, permitting access to Plaintiffs' communications; and
f. The unlawful plan ARC carried out to effectuate its collection and interception of Plaintiffs' communications.

118. The data collected by Defendant constituted "confidential communications," as that term is used in Section 632 because Plaintiffs and class members had an objectively reasonable expectation of privacy while sharing their sensitive personal and financial data for the purpose of purchasing flight tickets.

119. Plaintiffs and Class members did not know, and reasonably could not have known, that Defendant was recording, storing, and permanently archiving these communications with the intention of sharing with others. Defendant's conduct thus constitutes an unlawful recording and use of confidential communications within the meaning of § 632.

120. Plaintiffs have suffered actual losses by reason of these violations, including, but not limited to, violation of their rights to privacy and loss of value in their personally identifiable information.

121. Plaintiffs have been injured by the violations of California Penal Code §§ 631,632 and 637.7 and each seek damages for the greater of $10,000 per violation or three times the amount of actual damages.

27

Class Action Complaint

## COUNT III
### Violation of the Stored Communications Act,
### [18 U.S.C. § 2701 et seq.]

122. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

123. The SCA, enacted as part of the Electronic Communications Privacy Act of 1986, protects the privacy of communications stored in electronic systems and prohibits unauthorized access, acquisition, and disclosure of stored electronic communications to third parties and the government.

124. 18 U.S.C. § 2702(2) prohibits a person or entity that provides a remote computing service (RCS) from knowingly divulging to any person or entity the contents of any communication which is carried or maintained on that service (A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service; (B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

125. Additionally, 18 U.S.C. § 2702(3) prohibits RCSs from knowingly divulging a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by paragraph (1) or (2)) to any governmental entity.

126. 18 U.S.C. §§ 2701–2712. Section 2707 provides a civil cause of action for any person aggrieved by a violation of §§ 2701–2712 and authorizes actual damages, punitive damages, reasonable attorney's fees, and other relief, including injunctive relief.

127. Defendant is a Remote Computing Service under 18 USC § 2711(2) because it provides computer storage or processing services by means of an electronic communications system through its role as a financial clearinghouse. Defendant receives the data in question via electronic transmission from travel agencies for the sole purpose of processing payments for ticket purchases and financial transactions.

28

Class Action Complaint

128. Defendant abused their unique position and intentionally accessed, procured, disclosed, or arranged for the disclosure of stored communications, records, and other passenger and ticket purchaser information belonging to Plaintiffs and members of the Class by selling licenses to TIP without authorization, consent, or valid legal process.

129. Defendant's violations were knowing and willful. Defendant devised a sophisticated system of collecting data through the legitimate role of ARC and then repurposed and sold access to that data through their secret subsidiary TIP to hide the source of the data from the public.

130. As a proximate result of Defendant's violations of the SCA, Plaintiffs and the Class members have been injured and are entitled to recover actual damages, punitive damages, reasonable attorney's fees and costs, and any other relief this Court deems appropriate, including injunctive relief to prevent ongoing misuse and dissemination of PII and Travel Data.

## COUNT IV
## Fraud – Misrepresentation & Concealment

131. Plaintiffs repeat and reallege every allegation set forth in the preceding paragraphs.

132. The elements of fraud are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity; (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage. (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 676, p. 778; see also Civ. Code, § 1709.

133. Defendant materially misrepresented and concealed critical facts regarding its collection, retention, and dissemination of passenger booking data, thereby inducing Plaintiffs and Class members to purchase tickets and transmit their personal information through Defendant's settlement system under false pretenses.

134. Specifically, Defendant failed to disclose: (a) that it would indefinitely retain passenger booking records in its TIP database, far beyond the narrow and legitimate purpose of ticket settlement; (b) that it would sell, license, and disclose such non-anonymized records to third-parties, including government agencies such as the DHS and ICE, for surveillance and investigatory purposes; (c) that it would aggregate Plaintiffs' and Class members' booking data with other datasets to construct travel histories capable of tracking individual movements across time and geography;

29

Class Action Complaint

and (d) that these practices exceeded the lawful scope of information authorized under the Transportation Security Administration's Secure Flight Program, which is expressly limited to minimal identifiers (name, date of birth, gender), obtained shortly before flight departure, and subject to mandatory deletion.

135.    In Defendant's privacy policy they describe themselves as "providing financial settlement of transactions" and they assure customers that all personally identifiable information collected by Defendant is used to "complete transactions, fulfill requests, and facilitate performance of contracts between ARC and participants in ARC's programs and services." Defendant further stated that it ensures that the information you provide is not used by participants in Defendant's programs and services for purposes other than described in this policy, and that Defendant only retains such information for a period "deemed necessary to meet ARC's legal obligations and business requirements to facilitated the processing and settlement of transactions."

136.    At all times, Defendant knew of the falsity of their statements. Defendant's actions were intentionally designed to induce users' reliance on their services. Defendant built this sophisticated data collection machine to hide the full extent of their data mining practices while simultaneously encouraging users to keep using it, falsely believing doing so would safeguard their sensitive private data.

137.    Plaintiffs reasonably and justifiably relied on Defendant's statements.

138.    These material misrepresentations and omissions were contrary to statutory obligations and public representations concerning the lawful and limited use of passenger data.

139.    Plaintiffs and Class members reasonably relied on Defendant's statements and omissions, believing their information would be used solely for necessary ticket settlement functions and protected from unauthorized secondary use or disclosure. Defendant's failure to disclose these facts was intended to and did mislead Plaintiffs and Class members, depriving them of the opportunity to safeguard their privacy and autonomy over sensitive travel information and guard against unwanted and unwarranted government surveillance.

140.    As a direct and proximate result, Plaintiffs and Class members suffered harm, including loss of control over personal data, invasion of privacy, and exposure to government surveillance and potential misuse of their travel histories.

141.    As a result of Defendant's fraudulent conduct and pattern of concealment, Plaintiffs and the class members have been harmed and are entitled to punitive damages.

**COUNT V**
**Invasion of Privacy**

142.    Plaintiffs hereby incorporate all foregoing paragraphs as if fully stated herein.

143.    Defendant collected the data with the intent to intrude upon users' seclusion and invade their constitutional privacy. The California Constitution and common law protect consumers from invasions of their privacy and intrusion upon seclusion.

144.    The right to privacy in California's constitution creates a right of action against private entities such as ARC.

145.    Plaintiffs' expectation of privacy is deeply enshrined in Article I, section 1 of the California Constitution: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property and pursuing and obtaining safety, happiness, and privacy."

146.    The phrase "and privacy" was added by the "Privacy Initiative" adopted by California voters in 1972. After voters approved a proposed legislative constitutional amendment designated as Proposition 11. Critically, the argument in favor of Proposition 11 reveals that the legislative intent was to curb businesses' control over the unauthorized collection and use of consumers' personal information, stating:

> The right of privacy is the right to be left alone…It prevents government and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us. Fundamental to our privacy is the ability to control circulation of personal information. This is essential to social relationships and personal freedom. BALLOT PAMP., PROPOSED STATS. & AMENDS. TO CAL. CONST. WITH ARGUMENTS TO VOTERS, GEN. ELECTION *26 (Nov. 7, 1972).

147.    The principal purpose of this constitutional right was to protect against unnecessary information gathering, use, and dissemination by public and private entities, including Defendant.

31

Class Action Complaint

148.     To plead a California constitutional privacy claim, a plaintiff must show an invasion of (1) a legally protected privacy interest; (2) where the plaintiff had a reasonable expectation of privacy in the circumstances; and (3) conduct by the defendant constituting a serious invasion of privacy.

149.     As described herein, Defendant has intruded upon the following legally protected privacy interests:

a. The California Invasion of Privacy Act and California Consumer Protection Act as alleged herein
b. A Fourth Amendment right to privacy from unwarranted government surveillance
c. The California Constitution, which guarantees Californians the right to privacy
d. ARC's Privacy Policy and policies referenced therein where assurances were made to only hold onto user data for the purpose of settlement of financial transactions, not to intercept, collect, and store Plaintiffs' communications.

150.     Plaintiffs had a reasonable expectation of privacy under the circumstances in that Plaintiffs could not reasonably expect Defendant would commit unlawful and offensive acts in violation of federal and state civil and criminal laws. Defendant's actions constituted a serious invasion of privacy in that it:

a. Invaded a zone of privacy protected by the Fourth Amendment
b. Violated dozens of state criminal laws on wiretapping and invasion of privacy, including the California Invasion of Privacy Act and California Consumer Protection Act
c. Invaded the privacy rights of hundreds of millions of consumers (including Plaintiffs) without their consent
d. Constituted the unauthorized taking of valuable information from hundreds of millions of consumers (including Plaintiffs) through deceit; and
e. Further violated Plaintiffs' reasonable expectation of privacy via ARC's review, analysis, and subsequent uses of Plaintiffs' private information that Plaintiffs considered sensitive and confidential.

151.     The surreptitious and unauthorized collection, retention, and disclosure of the plaintiffs' PII and Travel Data to government agencies despite assurances that such information would be kept secure, constitutes an egregious breach of social norms that is highly offensive.

152.     Defendant's invasion of privacy into Plaintiffs' internet communications was highly offensive to a reasonable person in that they violated federal and state criminal and civil laws designed to protect individual privacy and against theft.

153.     Following Defendant's unauthorized interception of the sensitive and valuable personal information, the subsequent analysis and use of that private browsing activity to sell to

32

Class Action Complaint

government intelligence agencies for surveillance purposes violated their reasonable expectations of privacy.

154. Surreptitious recording and dissemination of communications is highly offensive behavior. Collecting, saving, and selling personal and sensitive user data and travel data without consent, and to third parties and government agencies for unwarranted surveillance, is highly offensive behavior.

155. Defendant lacked a legitimate business interest in retaining and sharing this data without their consent.

156. Plaintiffs have been damaged by Defendant's invasion of their privacy, and they are entitled to just compensation and injunctive relief.

## COUNT VI
## Intrusion Upon Seclusion

157. Plaintiffs repeat and reallege every allegation set forth in the preceding paragraphs.

158. Plaintiffs asserting claims for intrusion upon seclusion must plead (1) intrusion into a private place, conversation, or matter; (2) in a manner highly offensive to a reasonable person.

159. In carrying out its scheme to intercept, collect, store, and share access to Plaintiff's communications made while purchasing flight tickets from a third-party travel agency in violation of its own privacy policy, Defendant intentionally intruded upon Plaintiffs' solitude or seclusion in that it effectively placed itself in the middle of conversations, and collected data far outside the authorized scope of their permitted role and then shared it through TIP.

160. Defendant's data collection and distribution through TIP were not authorized by Plaintiffs and the travel agencies with which they were communicating.

161. Plaintiffs and Class members maintained a reasonable expectation of privacy in their personal and sensitive Travel Data and PII, including their names, dates of birth, payment information, itineraries, destinations, ticket numbers, and historical travel records. This information was provided for the limited purpose of purchasing airline tickets and facilitating airline settlement transactions, not for indefinite retention, data mining, or disclosure to third parties.

33

162.    Defendant intentionally and without consent intruded upon Plaintiffs' and Class members' private affairs by collecting and retaining their personal travel booking records within its TIP database, and selling, licensing, and disclosing such information to third parties for investigatory and surveillance purposes wholly unrelated to the legitimate purpose of ticket settlement.

163.    The taking of personally identifiable information and Travel Data from Plaintiffs through deceit is highly offensive behavior. Secretly allowing third parties to monitor customers' Travel Data and PII is highly offensive behavior.

164.    Defendant's conduct was highly offensive to a reasonable person, as it exposed sensitive details of Californians' personal lives, travel habits, associations, and movements to unauthorized government scrutiny and potential profiling.

165.    Defendant's intentional intrusion into their ticket purchasing communications was highly offensive to a reasonable person in that they violated federal and state criminal and civil laws designed to protect individual privacy and against theft.

166.    Unauthorized collection, retention, and distribution of Plaintiffs' and class members sensitive personal and Travel Data is highly offensive behavior.

167.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs and class members suffered damages, including emotional distress, mental anguish, and loss of privacy, and are entitled to reasonable compensation including but not limited to disgorgement of profits related to the unlawful data collection and sharing scheme.

## COUNT VII
## Breach of Contract

168.    Plaintiffs repeat and reallege every allegation set forth in the preceding paragraphs.

169.    At all relevant times, Plaintiffs and Class members entered valid and enforceable contracts with Defendant, either directly or through online travel agencies such as Expedia, for the processing and settlement of airline ticket transactions. These contracts, whether express or implied, were supported by consideration in the form of payment of ticketing and transaction fees, and by Plaintiffs' provision of personal information necessary for booking and settlement purposes.

34

Class Action Complaint

170. Defendant's relationship with its users is governed by the ARC Terms of Service and Privacy Policy.

171. By entering into these agreements, Defendant had an obligation to use Plaintiffs' and Class members' personal information solely for the limited purpose of facilitating and settling airline ticket transactions. Defendant further had an implied contractual duty to safeguard such personal information and refrain from using it in a manner inconsistent with the parties' reasonable expectations.

172. Plaintiffs fulfilled their obligations under the relevant contracts by providing the necessary information to complete the financial transaction.

173. Defendant breached these promises by selling access to the data through TIP.

174. Defendant's improper sale and disclosure of Travel Data and PII breached their contractual commitments.

175. As a result of Defendant's breach(es), Defendant was able to unlawfully obtain the personal property of Plaintiffs far beyond the consented scope and earn unjust profits.

176. Defendant's conduct constitutes a material breach of contract because it deprived Plaintiffs and Class members of the benefit of their bargain—namely, that their personal Travel Data would only be used to complete ticket settlement and would not be retained, sold, or misused for unrelated purposes.

177. As a direct and proximate result of Defendant's breaches, Plaintiffs and Class members have suffered damages and are entitled to relief, including compensatory damages, consequential damages, and/or non-restitutionary disgorgement in an amount to be proven at trial.

## COUNT VIII
### Violations of the California Unfair Competition Law,
### [Cal. Bus. & Prof. Code §17200, *et seq.*]

178. Plaintiffs repeat and reallege every allegation set forth in the preceding paragraphs.

179. The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200 (UCL). By engaging in the practices aforementioned, Defendant has violated the UCL.

Class Action Complaint

180.    Defendants engaged in unlawful acts and practices - including misrepresenting privacy practices, failing to disclose and permit consumers to opt out of sales of PII, unlawfully accessing and disclosing stored communications, and otherwise profiting from consumers' Travel Data and PII — constitute unlawful, unfair, and/or fraudulent business acts and practices in violation of the UCL.

181.    Defendant's "unlawful" acts and practices include its violation of the California Invasion of Privacy Act, Cal. Penal Code §§ 631 and 632; Fraud; and Invasion of Privacy, Intrusion Upon Seclusion, California Consumer Privacy Act of 2018, and the Stored Communications Act.

182.    Defendant's conduct violated the spirit and letter of these laws, which protect property, economic and privacy interests and prohibit unauthorized disclosure and collection of private communications and personal information.

183.    Defendant's "unfair" acts and practices include its violation of property, economic and privacy interests protected by the statutes identified in paragraph 91.

184.    To establish liability under the unfair prong, Plaintiffs need not establish that these statutes were actually violated, although the claims pleaded herein do so.

185.    Plaintiffs have suffered injuries-in-fact, including the loss of money and/or property as a result of Defendant's unfair and/or unlawful practices. Plaintiffs have suffered unauthorized disclosure and taking of their personal information which has value, as demonstrated by its use and sale by Defendant. Plaintiffs have suffered harm in the form of diminution of the value of their private and personally identifiable data and content.

186.    Defendant's actions caused damage to, and loss of, Plaintiffs' property right to control the dissemination and use of their personal information and communications.

187.    The unlawful, unfair and fraudulent business practices of Defendants described above present a continuing threat to members of the public in that Defendants continue to engage in the conduct described therein.

188.    Defendant reaped unjust profits and revenues in violation of the UCL. This includes Defendant's profits and revenues from selling access to their Travel Intelligence Program for

36

Class Action Complaint

unwarranted and unauthorized surveillance. Plaintiffs seek restitution and disgorgement of these unjust profits and revenues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court to grant Plaintiffs and the Class members the following relief against Defendants:

A. A determination that this action is a proper class action under Code of Civil Procedure §382, certifying Plaintiffs as Class representatives, and appointing the undersigned counsel as Class counsel;

B. An award of compensatory damages, punitive damages, statutory and civil penalties to Plaintiffs and the Class as warranted by the CCPA, CIPA, UCL, and other applicable law;

C. Injunctive or other equitable relief to prevent Defendant's ongoing unlawful and unfair practices and implementation of comprehensive privacy, notice, and opt-out procedures;

D. Order disgorgement of all of Defendant's profits that were derived, in whole or in part, from Defendant's interception and subsequent use of Plaintiffs' communications and sensitive personal data;

E. Declaratory judgement in favor of Plaintiffs determining that Defendants' practices violate the statutes and laws alleged herein;

F. Award punitive damages in an amount to prevent Defendant's further misconduct;

G. An award of reasonable costs and expenses incurred in prosecuting this action, including attorneys' fees and expert fees pursuant to Cal. Code Civ. P. § 1021.5; and

H. Grant Plaintiffs such further relief as the Court deems appropriate.

37

Class Action Complaint

## JURY DEMAND

Plaintiffs and the Class demand a trial by jury on all issues so triable as a matter of right.

**POTTER HANDY LLP**

/s/ James M. Treglio

Dated: December 17, 2025                    By: _____

Mark D. Potter, Esq.
James M. Treglio, Esq.
Isabel Rose Masanque, Esq.
Claire Cylkowski, Esq.
Attorneys for the Plaintiffs and the Class

Class Action Complaint